UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

HEATHER MARIE LOWE,

                              Plaintiff,      **No. 6:15-cv-06077(MAT)**
                                              **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

—————————————————————————

## I.   Introduction

    Heather Marie Lowe ("Plaintiff") represented by counsel, brings this action pursuant to Title XVI of the Social Security Act, challenging the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion.

## II.   Procedural Status

    Plaintiff protectively filed an application for SSI on May 21, 2012, alleging disability since April 14, 2010, due to colitis, irritable bowel syndrome ("IBS"), bipolar disorder, severe depression, and anxiety. See T.144-49, 207-10.[1] After her claim was

---

[1]

    Numbers preceded by "T." refer to pages from the administrative transcript, submitted by Defendant as a separately bound exhibit.

denied, Plaintiff requested a hearing, which was held on , before administrative law judge Barry E. Ryan ("the ALJ") in Syracuse, New York. T.28-50. Plaintiff appeared with her attorney and testified. On January 13, 2014, the ALJ issued an unfavorable decision. T.-27. The Appeals Council denied Plaintiff's request for review on January 5, 2015, making the ALJ's decision the final decision of the Commissioner. T.1-4. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In connection with their motions, the parties have comprehensively summarized the administrative transcript in their briefs, and the Court adopts and incorporates these factual summaries by reference. The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further administrative proceedings consistent with this opinion.

### III. The ALJ's Decision

The ALJ followed the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 416.929(a). The ALJ found that Plaintiff had the "severe" impairments of colitis, irritable bowel syndrome, and history of peptic ulcer, but they did not meet or medically equal the severity of a listed impairment. T.12-16. The ALJ then

determined that Plaintiff had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour day; and stand and/or walk for 6 hours in an 8-hour day, but required "ready access" to toilet facilities. T.16. Based upon this RFC, and Plaintiff's age, education, and work experience, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  T.20-21. Accordingly, the ALJ entered a finding of "not disabled." T.21.

## IV.  Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748

F.2d at 112; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987) ("The scope of review of a disability determination . . . involves two levels of inquiry. . . . We must first decide whether [the Commissioner] applied the correct legal principles in making the determination. We must then decide whether the determination is supported by 'substantial evidence.'") (internal citations omitted; quotation omitted).

**V. Discussion**

   **A.   Erroneous Step Two Finding**

   Plaintiff argues that, at step two of the sequential evaluation, the ALJ erroneously failed to find that her various mental impairments are "severe."

   The Commissioner's regulations define a "severe" impairment as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Meadors v. Astrue</u>, 370 F. App'x 179, 182 (2d Cir. 2010). The Second Circuit has emphasized that step two's severity analysis "may do no more than screen out <u>de</u> <u>minimis</u> claims." <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995). The Commissioner has described the claimant's burden at step two as follows:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have *no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered. . . .

SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985) (emphasis added).

Although the ALJ recognized that Plaintiff had been diagnosed with bipolar disorder, panic disorder with agoraphobia, and post-traumatic stress disorder as the result of childhood emotional, physical, and sexual abuse, he found these impairments to be non-severe and did not include any limitations related to them in the RFC assessment. The ALJ justified this decision on the grounds that (1) Plaintiff only had a few mental health examinations by a psychiatrist (as opposed to a psychiatric nurse practitioner or social worker); (2) Plaintiff presented during these appointments as pleasant and cooperative with no evidence of thought disorder; (3) the psychiatrist indicated on one occasion that she was psychiatrically stable apart from some insomnia; and (4) the consultative psychologist's clinical examination findings allegedly were "normal." See T.13. The ALJ's analysis is flawed on multiple levels; it is superficial, it misstates the record, and it relies on a selective disregard of any medical evidence that supports Plaintiff's claim.

The ALJ's first reason for finding Plaintiff's mental impairments non-severe ignores the Commissioner's own policy ruling, which recognizes the current reality of psychiatric treatment in the managed health care context, where a patient may only see a psychiatrist periodically for, e.g., medication

management. See SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. Aug. 9, 2006) ("With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists."). Thus, the fact that Plaintiff saw a psychiatrist at only a few of her many appointments not mean that her mental impairments are not "severe."

With regard to second and third reasons for finding Plaintiff's mental impairments non-severe, it is apparent that the ALJ cherry-picked evidence from the record to support his conclusion and ignored evidence of psychiatric symptoms that would have a significant effect on her ability to perform work-related functions. This was error. See, e.g., Trumpower v. Colvin, No. 6:13-cv-6661(MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015) (finding reversible error where "the ALJ selectively parsed the record for evidence that Plaintiff had no issues with concentration, persistence and pace, while ignoring more recent evidence indicating that she does have significant problems in this area"). The record is replete with instances in which Plaintiff reported significant psychiatric symptoms. For example, on, Plaintiff reported daily, passive suicidal ideations; nightmares;

panic attacks (lightheadedness, dizziness, elevated blood pressure, and elevated temperature); and feelings of being overwhelmed. See T.458-59. After being referred to, and discharged from, St. Joseph's psychiatric emergency department, Plaintiff continued to experience anxiety, irritability, flight of ideas, increased goal-directed activities (e.g., constantly cleaning her house), and nightmares. See, e.g., T.468, 473, 475, 478, 479, 482, 484, 486. "While an ALJ is entitled to resolve conflicts in the evidentiary record, [he or] she 'cannot pick and choose evidence that supports a particular conclusion.'" Trumpower, 2015 WL 162991, at *17 (quoting Smith v. Bowen, 687 F. Supp. 902, 904 (S.D.N.Y. 1988) (citing Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir. 1983); Ceballeros v. Bowen, 649 F. Supp. 693, 700 (S.D.N.Y. 1986)).

The ALJ's fourth reason for finding Plaintiff's mental impairments non-severe similarly relies on a cherry-picking of the consultative psychologist's report. Although Dr. Long described Plaintiff's mood as "euthymic" and her affect full-range and appropriate with no memory or concentration deficits, she found Plaintiff's insight to be poor and her judgment to be fair, and noted that Plaintiff presents with a "long history of anxiety, but lacking insight or skills for managing anxiety." T.426-27. Dr. Long diagnosed Plaintiff with generalized anxiety disorder and concluded that "the results of the present evaluation appear to be consistent with psychiatric problems, which may at times interfere with her

ability to function on a regular basis." T.427. Dr. Long's report—to which ALJ accorded "great weight"—does, in fact, support a finding that Plaintiff's mental impairments are "severe" for purposes of step two. See SSR 85-28, 1985 WL 56856, at *3 (explaining that a finding of non-severe at step two is warranted only where the person's impairment(s) has *no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities*) (emphasis added).

"An ALJ's failure to make an explicit finding of a step-two impairment where substantial evidence supports the presence thereof" does not require remand unless "the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the claimant at later steps in the sequential evaluation process." Chandler v. Soc. Sec. Admin., No. 5:12-cv-155, 2013 WL 2482612, at *10 (D. Vt. June 10, 2013) (citing Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the impairments found non-severe during subsequent steps); other citation omitted); see also Lasiege v. Colvin, 7:12-cv-01398(NAM), 2014 WL 1269380, at *10 (N.D.N.Y. Mar. 25, 2014). Here, the ALJ did not account for any limitations resulting from Plaintiff's mental impairments in the ALJ's RFC determination, and therefore the Court finds that the ALJ's

step-two error prejudiced the Plaintiff. Remand accordingly is required.

## B.   Error in Applying the Treating Physician Rule

Plaintiff argues that the ALJ misapplied the treating physician rule and erroneously discounted the two opinions offered by her primary care physician, Dr. M. Richard Sheehan. There is no doubt that Dr. Sheehan, who has been Plaintiff's primary care doctor since March 30, 2011, T.736, qualifies as a treating physician. See Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) ("Whether the 'treating physician' rule is appropriately applied depends on 'the nature of the ongoing physician-treatment relationship.") (quoting Schisler v. Heckler, 851 F.2d 43, 45 (2d Cir. 1988)). Indeed, the Commissioner does not dispute that Dr. Sheehan qualifies as a treating source.

In the Second Circuit, "the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician[.]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (internal and other citations omitted). When an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" id. (quoting 20 C.F.R. § 404.1527(d)(2)), such as "(I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion;

(iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist;  and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" <u>Id.</u> (quoting 20 C.F.R. § 404.1527(d)(2)).

A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. <u>Halloran</u>, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); <u>Schaal v. Apfel</u>, 134 F.3d 496, 503-04 (2d Cir. 1998)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . .'" <u>Blakely v. Commissioner of Social Sec.</u>, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," <u>Rogers v. Commissioner of Social Sec.</u>, 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'"

Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).

Dr. Sheehan submitted two opinions regarding Plaintiff's limitations. On July 25, 2013, he completed a "Questionnaire" specifically focused on Plaintiff's gastrointestinal impairments, T.689-90, and indicated that he treated her for colitis, chronic abdominal pain, and IBS. T.689. Dr. Sheehan checked "yes" in response to whether these medical conditions (colitis, chronic abdominal pain, and IBS) would "require unlimited access to the bathroom," T.689, and he also checked "yes" in response to whether the need to use the bathroom "would be urgent and immediate." Id. Dr. Sheehan was asked to rate, as either "mild," "moderate," or "severe," the effect of Plaintiff's medical conditions on "concentration." T.690. Dr. Sheehan gave a rating of "severe," which, according to the form, means that the "ability to function in this area, though not totally precluded, is severely restricted causing more than a 33% disruption in the person's ability in this area." T.690. Finally, Dr. Sheehan indicated that the "medical conditions and/or interruption of sleep caused by the medical conditions would result in significant daytime fatigue" and that Plaintiff "would suffer severe fatigue and would need several periods of rest during the day with a total rest of over two (2) hours during a normal work day." T.690.

Subsequently, Dr. Sheehan completed a new "Questionnaire" on November 14, 2013, which was more general in scope than the previous Questionnaire. <u>See</u> T.732-36. He indicated that he treated Plaintiff for IBS, colitis, depression/anxiety, chronic pain syndrome, fibromyalgia, foot pain, and low back pain. T.732. For these conditions, Dr. Sheehan prescribed Norco, Lyrica, Celexa, Phenergan, Bentyl (dicyclomine), and Reglan (metoclopramide), which he said caused "lethargy" and "loss of concentration." T.733. With regard to her physical capacities, Dr. Sheehan indicated that Plaintiff can sit for approximately 4 hours, will need to change positions ever 60 minutes, can stand/walk for 2 hours, can lift up to 5 pounds up to 3 hours per day, but "should not at all" lift over 5 pounds. T.733. With regard to concentration and persistence, Dr. Sheehan opined that Plaintiff has "medium"[2] limitations in maintaining attention and concentration for extended periods, and sustaining an ordinary routine without special supervision; and "marked"[3] limitations in performing activities within a schedule, maintaining regular attendance and/or being punctual within customary tolerances and completing a normal workday and workweek

---

[2]

The form defined "medium" as "more than a slight but less than a serious limitation in this area. The [i]ndividual is still able to function satisfactorily for certain portion[s] of the day and/or perform the tasks satisfactorily on some of the occasions. The approximate [amount] of loss would be more than 20% for the particular activity but less than 1/3 of the day. (33%)." T.734.

[3]

The form defined "marked" as "there is a serious limitation in this area. There is a substantial loss in the ability to effectively function. The loss would be greater than 33%." T.734.

without interruptions from psychological based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. T.734. Dr. Sheehan assigned "medium" limitations in Plaintiff's ability to interact appropriately with the general public, co-workers, and peers. T.735. With regard to "adaptation/stress," Dr. Sheehan indicated that Plaintiff had "marked" limitations in her abilities to respond appropriately to ordinary stressors and ordinary changes in the work setting. Id. Finally, Dr. Sheehan stated that her symptoms of and treatment for Plaintiff' mental impairments would result in "more than 3" absences from work per month. Id.

The ALJ stated that Dr. Sheehan's opinions were "given little evidentiary weight in determining the claimant's [RFC] for several reasons." T.19. First, the ALJ "rejected" Dr. Sheehan's "opinions regarding the claimant's mental limitations . . . because he did not treat the claimant for her mental impairments and there are no mental status examinations in his treatment records." T.19. The ALJ significantly mischaracterized the record in making this assertion. As noted above, the first Questionnaire specifically focused on Plaintiff's gastrointestinal impairments, i.e., her colitis, chronic abdominal pain, and IBS. T.689. Dr. Sheehan was asked to opine as to how these impairments—*not* her mental impairments—affected her ability to concentrate, and he indicated that the resultant limitations were "severe." T.690. Thus, the ALJ

mischaracterized the substance of Dr. Sheehan's first
Questionnaire, which was improper. See, e.g., Brennan v. Colvin,
No. 13-CV-6338 AJN RLE, 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25,
2015) (" By unreasonably minimizing Dr. Barandaran's opinion that
corroborated Dr. Fauser's opinion, the ALJ mischaracterized
evidence in the record. In evaluating the record, the ALJ may not
ignore or mischaracterize evidence of a person's alleged
disability.") (citing Ericksson v. Comm'r of Soc. Sec., 557 F.3d
79, 82-84 (2d Cir. 2009) ("[T]he record demonstrates that the first
ALJ improperly disregarded or mischaracterized evidence of
Ericksson's continuing disability, and that the second ALJ awarded
Ericksson benefits based, in substantial part, on a proper
assessment of this very evidence.")). Furthermore, in the second
Questionnaire, Dr. Sheehan indicated that he treated Plaintiff for
IBS, colitis, chronic pain syndrome, fibromyalgia, foot pain, and
low back pain, in addition to depression and anxiety. The second
Questionnaire did *not* ask Dr. Sheehan to base his opinions solely
on her mental impairments, and there is no basis it was improper
for the ALJ to infer such a restriction on Dr. Sheehan's opinions
in the second Questionnaire. See Tim v. Colvin,
No. 6:12-cv-1761(GLS/ESH), 2014 WL 838080, at *8 (N.D.N.Y. Mar. 4,
2014) ("The only reason articulated by ALJ Greener was that
J. Dombrocia's opinions were supported by 'mental status
examinations in the record.' These mental status examinations,

apparently, are the same two instances relied on by ALJ Greener to discount opinions of treating psychiatrist Dr. Raju. Based on the earlier cherry-picking analysis, this cannot constitute a good reason.") (citing Fiorello v. Heckler, 725 F.2d 174, 175-76 (2d Cir. 1983)); other citation omitted). Finally, the ALJ gave "little weight" to Dr. Sheehan's opinions regarding Plaintiff's "physical limitations" "because there is [sic] no documented clinical findings to establish that the claimant has fibromyalgia and no diagnostic images of her foot or lumbar spine to establish a medically determinable foot or back impairment." T.20. By selectively parsing the record, the ALJ ignored that Dr. Sheehan's Questionnaires and the opinions therein were not solely based on fibromyalgia and low back/foot pain, and were not primarily based on those impairments, given that the chief complaints for which Dr. Sheehan treated Plaintiff were colitis, IBS, and chronic abdominal pain. As noted above, in the first Questionnaire, Dr. Sheehan indicated that Plaintiff's gastrointestinal impairments cause various physical limitations. It bears noting that consultative physician Dr. Persaud, whose opinion the ALJ accorded "some weight," found that Plaintiff has "moderate to marked restriction for lifting, carrying, pushing, and pulling due to colitis." T.422. The ALJ did not explain why he gave "some weight" to Dr. Persaud's opinion finding that Plaintiff's colitis and IBS caused physical restrictions, but disregarded the physical

restrictions imposed by Dr. Sheehan in his opinion addressing the limiting effects of Plaintiff's gastrointestinal impairments. In evaluating Dr. Sheehan's Questionnaires, the ALJ mischaracterized the substance of those reports and relied upon a cherry-picking approach to the record evidence. See Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (noting that "an ALJ cannot pick and choose only parts of a medical opinion that support his determination"). See Miller v. Colvin, __ F. Supp.3d ___, 2015 WL 4892618, at *5 (W.D.N.Y. Aug. 17, 2015) ("The ALJ's reason, which relies on a selective reading of the record, is not a 'good reason.'") (citations omitted).

Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998). As discussed above, the ALJ did not provide "good reasons" for the less-than-controlling weight given to the treating source opinions of Dr. Sheehan, and therefore this case must be remanded. See, e.g., Richardson v. Barnhart, 443 F. Supp.2d 411, 424-25 (W.D.N.Y. 2006) (remanding for a second time where the ALJ's decision "did not give good reasons, supported by substantial evidence, for failing to assign controlling weight to the opinion of a treating source" and the ALJ "failed to follow the treating physician rule by ignoring substantial evidence of record and by committing legal error in his analysis of [the treating physician]'s opinions").

-16-

Remand is required so that the ALJ can reconsider Dr. Sheehan's Questionnaires in light of the required regulatory factors. If the ALJ elects to discount Dr. Sheehan's Questionnaires, he must explicitly consider the required factors and provide "good reasons" for rejecting them. E.g., Woodworth v. Colvin, No. 6:15-cv-6041(MAT), 2015 WL 9255566, at *4 (W.D.N.Y. Dec. 18, 2015) (citing Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 (2d Cir. 2010) (unpublished opn.) (remanding where ALJ failed adequately to explain his determination not to credit opinion of claimant's treating physician)).

### C.   RFC Assessment and Step Five Analysis Not Supported by Substantial Evidence

Social Security Ruling ("SSR") 83-10 defines RFC as follows: "A medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). . . ." SSR 83-10, 1983 WL 31251, at *7 (S.S.A. 1983). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). The work functions likely to be limited depend on many factors, including the particular limitations and

symptoms caused by the claimant's medically determinable impairments. See, e.g., White v. Barnhart, 340 F. Supp. 2d 1283, 1288-89 (N.D. Ala. 2004) (claimant's urinary frequency and pain due to her medically determinable impairment were among factors to be considered in determining limitation of function). "As explicitly stated in the regulations, RFC is a medical assessment; therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision." Gray v. Chater, 903 F. Supp. 293, 301 (N.D.N.Y. 1995) (citing 20 C.F.R. § 404.1513(c), (d)(3)); other citation omitted).

The record indicates that Plaintiff consistently has reported "polyuria" along with "abdominal pain (constatnt, mild, aching), chills, fever, flank pain, nausea, urgency, urinary frequency, vomiting and blood in stool." T.298. On July 9, 2012, Plaintiff told Dr. Sheehan that she had been on Lialda,[4] but still "ha[d] been going every 20 minutes and sees blood on toilet paper," and has "belly pain around [her] umbilicus." T.298; see also, e.g., T.331 (reporting to Dr. Sheehan 3 months of diarrhea, 5 to 6 bowel movements per day with "loose, watery, and mucoid stools," with "abdominal cramping, nausea, and urgency"); T.564 (reporting to Dr. Sheehan frequent abdominal pain and frequent diarrhea); T.589

---

[4] Lialda (mesalamine) is "used to treat a certain bowel disease (ulcerative colitis). It helps to reduce symptoms of ulcerative colitis such as diarrhea, rectal bleeding, and stomach pain. Mesalamine belongs to a class of drugs known as aminosalicylates. It works by decreasing swelling in the colon." http://www.webmd.com/drugs/2/drug-147055-1023/lialda-oral/mesalamine5-aminosalicylicaciddelayed-release12gm-oral/details (last accessed Feb. 12, 2016).

(Dr. Sheehan noted she was "[p]ositive for acid reflux symptoms, abdominal bloating, heartburn, melena[5] and hyperdefecation[6]"); T.594 (reporting ongoing nausea/vomiting and diarrhea); T.692 (diarrhea, loose watery stools, about 5 to 6 times per day; crampy abdominal pain, with or without diarrhea; pain is 8/10 at its worst); T.695 (hospitalization due to colitis flare; diagnosing "intractable diarrhea and abdominal pain" and prescribing Dilaudid[7] as needed for pain); T.698 (acute diarrhea for 5 days, manifested by 7 "loose brown stools per day").

The ALJ purported to include Plaintiff's gastrointestinal symptoms in the RFC assessment by stating that she "requires *ready* access to toilet facilities," T.16 (emphasis supplied). Then, in his step five analysis, the ALJ summarily concluded, without the benefit of a vocational expert's testimony, that "[h]er need to have access to toilet facilities does not significantly erode the light occupational base because federal law requires that employers provide employees *reasonable* access to bathroom facilities." T.21

---

[5]

Melena is defined as "[t]he passage of black, tarry stools composed largely of blood that has been acted on by gastric juices, indicative of bleeding in the upper digestive tract." http://medical-dictionary.thefreedictionary.com/melena (last accessed Feb. 12, 2016).

[6]

Hyperdefecation is defined as "[i]ncreased stool frequency without an increase in stool weight above normal." http://medical-dictionary.thefreedictionary.com/hyperdefecation (last accessed Feb. 12, 2016).

[7]

"Dilaudid is a narcotic painkiller prescribed for the relief of moderate to severe pain." http://www.pdrhealth.com/drugs/dilaudid (last accessed Feb. 12, 2016).

(emphasis supplied). The ALJ further asserted that her "need to use the facilities would generally be accommodated during breaks and lunch period." T.21.

As an initial matter, the ALJ failed to make specific findings regarding the frequency and length of anticipated bathroom breaks, e.g., whether Plaintiff's specific needs for frequency of bathroom use are compatible with ordinary, acceptable breaks (typically defined to mean one 15 minute break in the morning, one 15 minute break in the afternoon, and one 30 minute lunch break) or would be too frequent to be acceptable; and whether the length of bathroom breaks anticipated to be needed by Plaintiff are within customarily permitted time break times, or would cause her to be off-task or away from her workstation too often. See, e.g., Spaulding v. Astrue, 702 F. Supp.2d 983, 985 (N.D. Ill. 2010) (ALJ's failure to sufficiently articulate his finding regarding the frequency and duration of claimant's required bathroom breaks, precluded meaningful judicial review and required remand); Compston v. Astrue, 2:10-CV-828, 2011 WL 4360106, at *11 (S.D. Ohio July 18, 2011) ("Dr. Hartwick opined that Plaintiff would need at least five restroom breaks per day. This number of breaks is more than the usual number of breaks an employer provides to an employee. The ALJ, however, made no specific findings concerning the frequency and duration of Plaintiff's bathroom usage.") (footnotes and citations omitted); Brueggen v. Barnhart, No. 06-C-0154-C, 2006 WL

5999614, at *7 (W.D. Wisc. Dec. 15, 2006); (remanding for ALJ to "make a specific finding concerning the frequency and duration of plaintiff's bathroom usage and determine whether, in light of those findings, plaintiff is able to work"); Green v. Astrue, No. 3:09-CV-331, 2010 WL 2901765, at *6 (E.D. Tenn. July 2, 2010) (remanding because of "the ALJ's failure to specify precisely how [claimant]'s need for frequent restroom breaks impacted her ability to work")).

Moreover, the ALJ did not base his conclusions regarding Plaintiff's requirements for bathroom access bathroom and the extent to which this erodes the occupational basis for light work are based on any medical opinion or vocational expert testimony. Instead, they are the result of the ALJ relying on his own lay opinion to provide critical evidence to support his RFC assessment. This was error. See Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here.") (citations omitted); Hilsdorf v. Comm'r of Social Sec., 724 F. Supp.2d 330, 354 (E.D.N.Y. 2010) ("[T]he ALJ improperly drew his own conclusions about [the claimant]'s daily functioning, which were not supported by substantial evidence."); see also Sanchez v. Colvin, No. 14-CV-1008 MKB, 2015 WL 4390246, at

*15 (E.D.N.Y. July 14, 2015) ("[T]he ALJ's [step five] conclusion that jobs existed in significant numbers during the period at issue must be based on some evidence beyond the ALJ's own intuition or speculation.") (citing, inter alia, Cosnyka v. Colvin, 576 F. App'x 43, 46 (2d Cir. 2014) (ALJ's conclusion that there were jobs claimant could perform was not based on substantial evidence when vocational expert's testimony about what jobs were available depended on ALJ's determination that claimant would have to take a 6-minute break every hour, which "was not based on the record [which only stated claimant would be off-task for 10% percent of the work day] but was the result of the ALJ's own surmise"); Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (ALJ's findings at step five regarding which jobs a claimant is able to perform must be "supported by substantial evidence, not mere intuition or conjecture") (citation omitted)).

The RFC assessment is also deficient because there are only two medical opinions addressing Plaintiff's ability to lift and care lift and carry, but neither of them supports the ALJ's conclusion that Plaintiff can perform light work. As noted above, Plaintiff's primary care physician Dr. Sheehan stated that she was limited to lifting/carrying up to 5 pounds, T.732, which is inconsistent with the ability to perform light, much less sedentary, work. Consultative physician Dr. Persaud assessed "moderate to marked restriction for lifting [and] carrying," T.422,

which does not provide substantial evidence of an ability to "occasionally" lift and carry 20 pounds, and "frequently" carry and lift 10 pounds, as required to perform work at the light exertional level. See, e.g., Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (a physician's use of the terms "moderate" and "mild," without additional information, does not permit the ALJ, a layperson notwithstanding [his] considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work. . . ."); Seignious v. Colvin, No. 6:15-CV-06065(MAT), 2016 WL 96219, at *3 (W.D.N.Y. Jan. 8, 2016) (consultative physician's "evaluation of 'moderate to severe' limitations is too vague, on its face, to constitute substantial evidence supporting the ALJ's conclusion that [the claimant] can perform the exertional requirements of sedentary work") (citations omitted). Because Dr. Sheehan is the only medical opinion in the record to assess Plaintiff's ability to lift and carry with specificity, and because the ALJ ultimately gave little evidentiary weight to that opinion, the Court is "left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion." Tomford v. Comm'r of Soc. Sec., No. 13-11140, 2014 WL 764685, at *16 (E.D. Mich. Feb. 25, 2014) (citations omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (stating that "the ALJ cannot arbitrarily substitute

his own judgment for competent medical opinion"). In short, the ALJ's RFC determination that Plaintiff can lift up to 20 pounds is not supported by substantial evidence.

### D.    Remedy

Sentence four of 42 U.S.C. § 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405(g)). The Court finds that remand is appropriate here because the ALJ "failed to fulfill [his] duty," Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (quotation omitted), in several respects, and "'further findings' would . . . help to assure the proper disposition of [Plaintiff]'s claim." Id. (quotation omitted). The ALJ's step two analysis omitting Plaintiff's multiple mental impairments as "severe" impairments was erroneous; the ALJ mischaracterized the record and failed to provide "good reasons" for discounting the opinions of treating physician Dr. Sheehan; the RFC assessment is deficient because the ALJ failed to make specific factual findings regarding the frequency and duration of bathroom breaks required by Plaintiff; the RFC assessment's lifting and carrying requirement is not based on substantial evidence because there are no medical opinions supporting the ALJ's finding; the ALJ failed to support his findings regarding Plaintiff's ability to lift and carry with

medical opinion; and the ALJ failed to call a vocational expert at step five to testify regarding the effect of additional bathroom breaks required by Plaintiff on the occupational base. The foregoing omissions have frustrated the Court's ability to conduct a meaningful review of the substantiality of the evidence supporting the ALJ's decision. Therefore, the Court determines that remand is the appropriate remedy in this matter.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt #13) is denied, Plaintiff's motion for judgment on the pleadings (Dkt #9) is granted. The Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings consistent with this opinion. In particular, the ALJ is directed to perform a new sequential evaluation, including Plaintiff's mental impairments as "severe" impairments at step two; re-evaluate the opinions of treating physician Dr. Sheehan and, if the ALJ discounts, them, provide "good reasons" for doing so; re-assess Plaintiff's RFC for lifting and carry, relying on specific medical opinions, and, if necessary, re-contacting Dr. Persaud for clarification of her report; make specific factual findings regarding the frequency and duration of bathroom breaks required by Plaintiff; and call a vocational expert at step five to testify regarding the effect of additional bathroom breaks required by Plaintiff on the occupational base.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                    S/Michael A. Telesca

                        _____
                                    HONORABLE MICHAEL A. TELESCA
                                    United States District Judge

Dated:      February 17, 2016
            Rochester, New York